# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# DELTA DIVISION

**MARLETTE S. JONES,**                                                                               **PLAINTIFF,**

**VS.**                                                              **CIVIL ACTION NO. 2:05CV162-P-B**

**HERITAGE PROPERTIES, INC.,**                                          **DEFENDANT.**

## MEMORANDUM OPINION

This matter comes before the court upon Defendant's Motion for Summary Judgment [30-1]. After due consideration of the motion and the responses filed thereto, the court is prepared to rule.

## I. FACTUAL BACKGROUND

Defendant Heritage Properties, Inc. manages approximately forty-six apartment communities in Mississippi, one of which is the Plantation Apartments in Olive Branch, Mississippi. Heritage Properties hired the plaintiff on May 20, 2002 to be a leasing consultant at the Plantation Apartments. The chain of command at the Plantation Apartments above the plaintiff, in ascending order, was Faith Campell, assistant manager; Brenda Wright, property manager; Betty Johnson, area supervisor; and Wayne Pierce, director of property management.

It is undisputed that at the beginning of every year, employees receive a fax from the home office with the holiday itinerary, and in 2004, New Year's Eve which fell on a Friday, was not listed as a holiday on that document. Employees were given Saturday, January 1, 2005 off. Though it is undisputed that the plaintiff was aware that Friday was not a holiday, she faxed a note on December 30, 2004 to Wayne Pierce which stated: "Mr. Pierce, can we pretty please have a day off for the new year? You are truly loved by us all! Plantation Apt. Staff." The plaintiff agrees that she called at least one other property to determine if other employees were faxing a similar request to Mr. Pierce. The

1

plaintiff concedes that she did not follow the chain of command by her request and that Brenda Wright, the property manager, was not present at the apartments that day. However, the plaintiff alleges that Faith Campbell, the assistant manager, approved the plaintiff's fax. The defendant counters that Campbell was a new employee and did not yet understand Plantation's chain-of-command management style.

On December 31, 2004, the day after she sent the fax, the plaintiff was terminated by Brenda Johnson for insubordination because she sent the request directly to Wayne Pierce instead of Brenda Wright, the property manager, or Betty Johnson, the area supervisor. The termination agreement stated:

> Instructions were given to all employees that December 31st would not be observed as a holiday. Marlette Jones called several properties and asked the staff to fax a letter to Mr. Wayne Pierce requesting the office be closed. She also sent a fax after being informed of it not [being] a holiday. Refusal to accept policy and follow the appropriate chain of command.

On January 4, 2005 the plaintiff filed an EEOC complaint charging race discrimination in violation of Title VII. She indicated that the dates the discrimination took place fell on the same day, December 31, 2004. The particulars of her EEOC charge were:

> On or about May 20, 2002, I was hired with the above employer as a leasing consultant. Further, I was terminated on December 31, 2004 for insubordination. The area supervisor alleged that I called several properties and ask [sic] the staff to fax a letter requesting the office to be closed after being informed that it was not a holiday. Prior to my termination, I had no disciplinary actions.
>
> In addition, I was the only Black leasing consultant to my knowledge. Further, I did not ask that the office be closed after being informed that it was not a holiday.
>
> I believe that I have been discriminated against because of my race (Black) in violation of Title VII of the Civil Rights Act of 1964, as amended.

2

The defendants argue that the plaintiff has since admitted that she knew Friday, December 31, 2004 was not a holiday when she sent the fax.

The plaintiff received her right to sue letter, dated May 23, 2003, from the EEOC on May 26, 2003. On August 22, 2005 the plaintiff filed her Complaint, alleging unlawful racial discrimination in violation of Title VII. In addition to alleging racial discrimination with regard to her termination for insubordination, the plaintiff also appears to allege claims of failure to promote and hostile work environment.

The defendant filed their motion for summary judgment on October 13, 2006 arguing that the plaintiff cannot establish that the defendant's legitimate, non-discriminatory reason for terminating her was a pretext for race discrimination. In their brief, the defendant concedes that the plaintiff can establish a *prima facie* case of race discrimination. The defendants also argue that any claims for failure to promote or hostile work environment are barred because they were not discussed in the EEOC charge and that the allegedly racially discriminatory remarks of Jim Carney, a co-owner of the property, and Betty Johnson, the area supervisor, were stray remarks and cannot be used as evidence of discrimination.

On October 31, 2006 the plaintiff filed a motion for leave to file an amended complaint to assert claims under 42 U.S.C. §§ 1981 and 1988. However, because the plaintiff's motion came almost seven months after the expiration of the deadline for amendments to pleadings and the plaintiff offered no adequate explanation for the delay in seeking leave to amend beyond mere inadvertence, the court denied the motion to amend on January 9, 2007.

In her response in opposition to the defendant's motion for summary judgment, the plaintiff argues that not only can she establish a *prima facie* case of racial discrimination since she was a

member of a protected class, she was qualified for the position, she suffered an adverse employment action, and a similarly situated white person, Diane Elliot, was not terminated for the very same behavior on the very same day, but she can also demonstrate that the defendant's proffered legitimate, non-discriminatory reason was a mere pretext for discrimination.

## II. DISCUSSION

### A. Summary Judgment

Summary judgment should be entered only if "[t]here is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment has the initial burden of demonstrating through the evidentiary materials that there is no actual dispute as to any material fact in the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In determining whether this burden has been met, the court should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion. *Id*. Furthermore, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The summary judgment procedure does not authorize trial by affidavit. Rather, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts

are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson*, 477 U.S. at 255. Accordingly, a court may not decide any factual issues found in the record on motion for summary judgment, but if such material issues are present, the court must deny the motion and proceed to trial. *Impossible Elec. Tech. v. Wackenhut Protection Systems*, 669 F.2d l026, l03l (5th Cir. l982); *Environmental Defense Fund v. Marsh*, 65l F.2d 983, 99l (5th Cir. l98l); *Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.*, 420 F.2d l2ll, l2l3 (5th Cir. l969).

Under the provisions of Federal Rule of Civil Procedure 56(e), a party against whom a motion for summary judgment is made may not merely rest upon his pleadings, but must, by affidavit, or other materials as provided in Rule 56, inform the court of specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

Summary judgment is not proper if a dispute about a material fact is "genuine," or in other words the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. There is no such issue unless the evidence sufficiently supports the non-moving party's version of the facts for a jury to return a verdict in the non-moving party's favor. *Id*. at 249. The relevant inquiry is whether or not there is sufficient disagreement on the facts to submit them to the jury or whether it is so one-sided that one party should prevail as a matter of law. *Id*. at 251. The issue must be genuine, and not pretended, and the evidence relied on to create such an issue must be substantial. *Southern Distributing Co. v. Southdown, Inc.*, 574 F.2d 824, 826 (5th Cir. 1978).

**B. EEOC Complaint**

As stated above, the plaintiff appears to allege Title VII racial discrimination not only for wrongful termination, but also for failure to promote and hostile work environment even though her EEOC complaint spoke only to the period of December 31, 2004 and her wrongful termination.

The Fifth Circuit has observed that "[t]he filing of an administrative complaint is ordinarily a jurisdictional prerequisite to a Title VII action." *Dollis v. Rubin*, 77 F.3d 77, 781 (5th Cir. 1995). The Court went on to say that "[a] Title VII cause of action may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination." *Id*. This "rule of reason" is meant to "protect[] unlettered lay persons making complaints without legal training or the assistance of counsel." *Fine v. GAF Chemical Corp.*, 995 F.2d 576, 578 (5th Cir. 1993).

The court concludes that claims of failure to promote or hostile work environment cannot reasonably be expected to have grown out of the EEOC charge since it clearly limits itself to immediate period of the termination.

**C. Title VII Race Discrimination**

Title VII prohibits discrimination based on race. 42 U.S.C. § 2000e-2(a). "Title VII discrimination can be established through either direct or circumstantial evidence" and when a case is based on circumstantial evidence, the court should look to the *McDonnell Douglas* test. *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

"Under this framework, the plaintiff must first create a presumption of discrimination by

6

making out a prima facie case of discrimination." *Laxton*, 333 F.3d at 578. (internal citations omitted). A prima facie case of race discrimination requires proof from the plaintiff that she was (1) a member of a protected class; (2) qualified for the position held; (3) subject to an adverse employment action; and (4) treated differently from others similarly situated. *McDonnell Douglas v. Green*, 411 U.S. 792, 802-05 (1973); *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005).

If the court concludes that the plaintiff can establish a prima facie case of race discrimination, the second stage of the *McDonnell Douglas* requires the defendant to proffer a legitimate, nondiscriminatory reason for the plaintiff's termination. If the employer does so, the presumption of discrimination dissipates. *Laxton*, 333 F.3d at 578. The burden for the employer for this step is to *proffer* a legitimate, nondiscriminatory reason. Just because such a reason is proffered does not mean that the reason has been established as true. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000) ("This burden on the employer is only one of production, not persuasion, involving no credibility assessments."). Thus, all the proffer does is defeat the presumption of discrimination created by the *prima facie* case.

If the defendant proffers a legitimate, nondiscriminatory reason for the adverse employment action, the burden is placed back upon the plaintiff to demonstrate the third stage of the *McDonnell Douglas* test which requires that "[t]he plaintiff ... bears the ultimate burden of persuading the trier of fact by a preponderance of the evidence that the employer intentionally discriminated against her because of her protected status." *Laxton*, 333 F.3d at 578. (internal citations omitted). In other words, if the plaintiff succeeds in demonstrating a *prima facie* case of discrimination, and if the employer proffers a legitimate, non-discriminatory reason for the adverse employment action, the burden shifts

back to the plaintiff to prove that the non-discriminatory reason given by the employer was a pretext, or excuse, for discrimination. This may be done by circumstantial evidence. *Russell*, 235 F.3d at 222.

In the instant case, the defendants have conceded that the plaintiff has established a *prima facie* case of race discrimination. She was a member of a protected class as a black person, she was qualified for her position, she was subject to an adverse employment action in the form of termination, and another person similarly situated was treated differently because a white woman, Diane Elliot, was not terminated for the same behavior during the same time period.

The defendants have proffered, not established, a legitimate, non-discriminatory reason for terminating the plaintiff: insubordination for not following the chain of command in her request to get a day off. Thus, the inference of discrimination created by the *prima facie* case has dissipated, leaving the ultimate burden to the plaintiff to show through circumstantial evidence that the reason given was a pretext for race discrimination. A "plaintiff may establish pretext ... by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Laxton*, 333 F.3d at 578. Furthermore, "[e]vidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case, is likely to support an inference of discrimination even without further evidence of defendant's true motive." *Id*.

To demonstrate that the defendant's reason for discrimination was a pretext for racial discrimination, the plaintiff points to the evidence that (1) Diane Elliot, a white female, was not terminated for the same behavior during the same period, (2) Wayne Pierce did not view the plaintiff's actions as insubordinate, (3) the defendant violated their own policies in the employee handbook, and (4) the alleged remarks of Jim Carney, a co-owner of the Plantation Apartments and Betty Johnson, the plaintiff's area supervisor evince their racial animus toward black people. The

8

plaintiff also points to various allegations regarding failure to promote and hostile work environment, but as the court discussed above, such allegations are barred because they reasonably would not have grown out of the investigation of her EEOC complaint, nor are they probative of her wrongful termination claim. If such evidence were allowed, the plaintiff would effectively be given the opportunity to recover for failure to promote and hostile work environment claims under the rubric of wrongful termination.

Having considered the plaintiff's evidence, the court concludes there is ample evidence to survive summary judgment with the exception of the failure to promote and hostile work environment allegations and the stray remarks allegedly made by Jim Carney and Betty Johnson – remarks the plaintiff did not hear herself.

**D. Stray Remarks**

"Stray remarks with no connection to an employment decision cannot create a fact issue regarding discriminatory intent and are insufficient to defeat summary judgment." *Scales v. Slater*, 181 F.3d 703, 712 (5th Cir. 1999). In the age discrimination context, the Fifth Circuit ruled that "[i]n order for an age-based comment to be probative of an employer's discriminatory intent, it must be direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was an impermissible factor in the decision to terminate the employee."*EEOC v. Texas Instruments Corp.*, 100 F.3d 1173, 1181 (5th Cir. 1996). Presumably, this standard would apply to alleged race-based comments as well. "[F]or comments in the workplace to provide sufficient evidence of discrimination, they must be '1) related [to the protected class of persons of which the plaintiff is a member]; 2) proximate in time to the terminations; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at

9

issue.'" *Auguster v. Vermillion Parish Sch. Bd.*, 249 F.3d 400, 405 (5th Cir. 2001).

Approximately six months prior to the plaintiff's termination, Jim Carney, a co-owner of the Plantation Apartments but not the plaintiff's direct supervisor, is alleged to have said that "he did not like having [the plaintiff] be the first face that a person sees upon coming through the door of the Plantation office." The court concludes that this statement is a stray remark and cannot survive summary judgment. First, it is undisputed that Carney was not a decision-maker in the plaintiff's termination. Second, the statement was not made in proximate time to the employment decision since it was allegedly made six months before the termination. Third, the statement itself is not related to the employment decision. Finally, the statement is too vague to be presumed racially motivated. The comment that Carney did not want the plaintiff's face to be the first one someone saw when they entered the office is not direct and unambiguous, and it would require inferences and presumptions on the jury's part to conclude that the comment referred to the plaintiff's race.

Though it is not clear when she allegedly made the statement, the plaintiff's witness Ashley Ingram testified that she heard Betty Johnson, the plaintiff's area supervisor, tell a subordinate to pull an ad from the newspaper because "all that is going to do is bring in the black trash from Memphis, and I am trying to weed out the blacks." It is undisputed that Johnson was the decision-maker who terminated the plaintiff. However, Ashley Ingram testified that she cannot recall when she heard the comment, therefore the plaintiff cannot prove Betty Johnson made the comment proximate in time to the termination. Furthermore, the comment, if made, has no relation to the decision to terminate the plaintiff. Therefore, Betty Johnson's statement was a stray remark and cannot survive summary judgment.

## III. CONCLUSION

For the reasons discussed above, the defendant's motion for summary judgment should be granted insofar as the plaintiff cannot submit evidence to the jury her claims for failure to promote and hostile work environment since they would not have grown out of the investigation of the EEOC complaint, nor can she submit evidence of the stray remarks of Jim Carney and Betty Johnson. The motion for summary judgment should be denied insofar as the plaintiff has established a *prima facie* case and has demonstrated adequate circumstantial evidence that the defendant's nondiscriminatory reason for terminating the plaintiff was a pretext for racial discrimination. Accordingly, an Order shall issue forthwith,

**THIS DAY** of January 22, 2007.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE